IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

DITO, INC.

Debtor

CASE NO. 15-06573 (MCF)

CHAPTER 7

DESTILERIA NACIONAL, INC.

Plaintiff,

v.

PORFIRIO E. DIAZ-TORRES, et al.

Defendants

ADVERSARY CASE NO. 19-00426

## **OPINION AND ORDER**

The question here is whether the bankruptcy court has jurisdiction to entertain a dispute between third parties wherein the bankruptcy estate and the debtor are not involved or affected by the outcome.

The Plaintiff, Destilería Nacional, Inc., (hereinafter "DNI") filed the instant adversary proceeding against the Defendants, Porfirio E. Diaz-Torres; Porfirio Diaz Romero, his wife Lillian Ivette Rodríguez de Armas and the conjugal partnership comprised by them; Iraida Diaz Romero; and Luis E. Diaz Romero, his wife Elba de Lourdes Rios-Prado and the conjugal partnership comprised by them; (hereinafter collectively referred to as the "Diaz Family")[1] and the Chapter 7 Trustee, Wigberto Lugo Mender (hereinafter "Trustee"), as sole representative of the bankruptcy estate.

---

[1] Co-defendants Porfirio Díaz Romero, Iraida Díaz Romero and Luis E. Díaz Romero are the heirs of Iraida E. Romero-Veintidós, the late wife of co-defendant Porfirio Diaz Romero.

-1-

DNI's complaint is composed of five counts: Count I, to declare a local court judgment null and void because the matter decided by that court was under the bankruptcy court's core jurisdiction; Count II, to declare that the Trustee did not duly abandon the cause of action that produced the local court judgment; Count III, determine that Dr. Porfirio E. Diaz-Torres breached his fiduciary and loyalty duties to the chapter 7 debtor, DITO, Inc.; Count IV, for damages in an amount of two million dollars; and Count V, to declare that no contract was perfected between DNI and the Diaz Family. The parties filed cross motions for summary judgment, oppositions and replies.

For the reasons stated herein, the court holds that the bankruptcy court has no jurisdiction over this third-party dispute.  Both DNI (plaintiff) and the Diaz Family (co-defendants) are all third parties unrelated to the bankruptcy case. The inclusion of the Chapter 7 Trustee in this litigation was merely proforma because he is the representative of DITO Inc.'s estate. DNI seeks to revoke an adverse local court action that has no effect on the bankruptcy estate.  Even if this court has jurisdiction, the complaint seeks to relitigate issues that were already presented in Puerto Rico's courts and as such it is barred by the doctrine of collateral estoppel. Consequently, the Plaintiff's motion for summary judgment is denied and the complaint is dismissed.

## I.      SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). Summary judgment is appropriate for

piercing the pleadings and assessing the proof in order to determine whether a trial is required. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). It is proper to enter summary judgment when the movant shows that there are no genuine disputes of material fact and as a consequence the movant is entitled to judgment as a matter of law. Id. at 322; Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538 (6th Cir. 2002). When both parties move for summary judgment, each party must carry its own burden of proof as the moving party in its cross motions and as the nonmoving party in response to the other party's motion. Wells Real Estate Inv. Trust II, Inc., 615 F.3d 45, 51 (1st Cir. 2010). If there are no disputed material facts, only one party is entitled to judgment as a matter of law. Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food Corp.), 553 B.R. 197, 205 (Bankr. D.P.R. 2016). This matter is appropriate for summary judgment disposition as there are no material facts in dispute and it is a matter of law. In re Colarusso, 382 F.3d 51 (1st Cir. 2004) (citing Celotex, 477 U.S. at 322-323); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

## II.   UNDISPUTED MATERIAL FACTS

1.      DITO, Inc. (hereinafter "Debtor") is a corporation created by co-defendant Dr. Porfirio E. Diaz-Torres to operate Old Harbor Brewery, a microbrewery and restaurant business.

2.      Dr. Diaz-Torres was the President of the Debtor.

3.      On September 29, 2006, Debtor executed a loan agreement with the Economic Development Bank for Puerto Rico (hereinafter "EDB") for an amount of $2,970,000.00. The loan agreement was secured through a security agreement in which the Debtor pledged its entire movable property to EDB.

4.      Dr. Diaz-Torres and his wife late wife Iraida E. Romero-Veintidós (hereinafter "Diaz-Romero Couple"), were co-signors to the loan agreement and

-3-

became joint and several guarantors.[2] They further secured the loan agreement with five mortgage notes encumbering properties of the Diaz-Romero Couple, among those: their residential property in the municipality of Guaynabo; a beach house located in the municipality of Naguabo; an apartment in the Caimito neighborhood in the municipality of San Juan; an apartment in the municipality of Arroyo; and Dr. Diaz-Torres' medical office in the Rio Piedras neighborhood of the Municipality of San Juan.

5. In 2014, the Debtor defaulted under the terms of the loan agreement and EDB filed a money collection and foreclosure action in the Commonwealth of Puerto Rico, Court of First Instance, San Juan Part, against the Debtor and the Diaz-Romero Couple (hereinafter "First Local Court Action").[3]

6. On October 27, 2014, EDB offered Dr. Diaz-Torres the opportunity to cancel the debt by paying $655,000 on or before December 31, 2014. (Docket No. 87-1 at 7).

7. On August 17, 2015, EDB obtained a favorable judgment in the First Local Court Action. The judgment ordered the Debtor and the Diaz-Romero Couple to pay EDB the sum of $4,061,783.34 and authorized the foreclosure of EDB's collateral involving the Debtor's personal property, and the Diaz-Romero Couple's real property.

8. On August 27, 2015, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.[4] The Diaz-Romero Couple did not file for bankruptcy.

9. Dr. Diaz sought for investors to pay certain debts of the Debtor. The Diaz-Romero Couple was joint and severally liable for these same debts. Among the debts were the judgment in favor of EDB in the amount of $4,061,783.34; a sales tax (IVU) debt owed to the Puerto Rico Treasury Department in the amount of $90,000; and a

---

[2] Due to Mrs. Romero's passing, her husband and heirs are referred to in this opinion as "the Diaz Family."
[3] KCD2014-2119.
[4] Case No. 15-06573.

-4-

personal loan of Dr. Diaz-Torres owed to Banco Santander in the amount of $26,130.00.

10. DNI was one of the potential investors sought by Dr. Diaz-Torres.

11. DNI, Debtor and Dr. Diaz-Torres began negotiating after the bankruptcy was filed.

12. On December 14, 2015, DNI and EDB executed a "Purchase and Sale Agreement." Pursuant to this agreement, DNI acquired EDB's proof of claim against Debtor and the Diaz-Romero.

13. DNI filed a notice of claim transfer in accordance with Fed. R. Bankr. P. 3001(e)(2) (Case No. 15-06573, Docket No. 69). The Debtor did not oppose the claim transfer in the bankruptcy case.

14. On February 26, 2016, the Debtor filed its disclosure statement and plan of reorganization in the bankruptcy case (Case No. 15-06573, Docket Nos. 87 & 88).

15. On July 6, 2016, the Debtor's bankruptcy case was converted from chapter 11 to chapter 7.

16. On July 7, 2016, Wigberto Lugo Mender was appointed as the chapter 7 trustee in the bankruptcy case.

17. On August 19, 2016, the Trustee filed a notice of abandonment regarding machinery, fixtures, equipment, supplies and two vehicles of the same model (Ford Transit 2012) (Case No. 15-06573, Docket No. 182).

18. On September 13, 2016, the Trustee filed a notice of abandonment regarding a vehicle (Nissan Lifter) and several security deposits (Case No. 15-06573, Docket No. 190).

19. On October 13, 2016, the Trustee filed another notice of abandonment regarding a vehicle (Ford Escape 2011) (Case No. 15-06573, Docket No. 193).

20. On October 19, 2016, DNI moved the bankruptcy court for relief from the automatic stay to foreclose on the Debtor's personal property that was abandoned by the Trustee at Docket No. 182, which served as collateral in state court case number KCD2014-2119. (Case No. 15-06573, Docket No. 195). The motion for relief of stay was unopposed.

21. On December 20, 2016, the bankruptcy court granted the motion for relief of stay (Case No. 15-06573, Docket No. 217).

22. On January 11, 2017, the Debtor and the Diaz Family filed a complaint in the Commonwealth of Puerto Rico, Court of First Instance, San Juan Part, against DNI, William Cruz (President of DNI) and EDB.[5] The action (hereinafter "Second Local Court Action") sought declaratory judgment, rescissory claim and breach of contract.

23. The main argument in the Second Local Court Action was that Dr. Diaz-Torres negotiated with EDB a loan payoff amount of $655,000 in order to save his home, medical office, and other real properties; and that in order to obtain the aforementioned amount he negotiated the sale of the Debtor's business with William Cruz, President of DNI, under certain terms that included payment of the $655,000 to EDB.

24. On October 24, 2017, the Trustee appeared before the San Juan court to request leave to intervene in the Second Local Court Action.

25. On October 31, 2017, an order was issued authorizing the Trustee to intervene. The order was notified on December 8, 2017.

26. On January 23, 2018, the Trustee filed a motion in the Second Local Court Action stating that "within both the DITO and D[iaz] R[omero] S[ons] bankruptcy estates, a ruling abandoning the present cause of action had been made, such that in

---

[5] Case No. K AC2017-0016.

accordance with section 554 of the Bankruptcy Code, the debtors, here plaintiffs, had recovered their rights to that lawsuit." (Docket No. 87-1 at 4-5).[6]

27. The Trustee did not file a notice of abandonment regarding the Second Local Court Action in the Debtor's bankruptcy case.

28. On December 19, 2018, the Diaz Family obtained a favorable judgment in the Second Local Court Action. The San Juan court ruled that on December 2015, a contract was perfected between the Debtor, Dr. Diaz-Torres, Mr. Cruz and DNI; that this contract contemplated the sale of the Debtor's business to DNI and as part of this sale, DNI would pay off the $655,000 debt with EDB; return the five mortgage notes to Dr. Diaz-Torres; pay $26,130 to Banco Santander for air conditioners; pay the $90,000 tax debt with the Puerto Rico Treasury Department; and to pay $136,000 in installments for the brands. (Docket No. 87-1 at 50-52).

29. The San Juan court also determined in its judgment that Mr. Cruz's behavior with Dr. Diaz-Torres made the latter understand that the mortgage notes would be returned to him, since he had delivered the brewery and that he only needed to convert the Debtor's chapter 11 bankruptcy case into chapter 7 bankruptcy. (Docket No. 87-1 at 58).

30. The San Juan court judgment ordered DNI and its president, Mr. Cruz, to comply with the rest of their obligations with the plaintiff, which included the deliverance of the original mortgage notes in favor of the Diaz-Romero Couple and payment of $252,130.00 plus 5.75% in interest to the Diaz-Romero Couple for the remaining considerations that were not performed. (Docket No. 87-1 at 59).

31. On March 25, 2019, DNI appealed the San Juan court judgment to the Puerto Rico Court of Appeals.

---

[6] The abandonment of the civil action was made only in the related bankruptcy case of In re Diaz Romero & Sons, Inc., Case No. 15-8127, Docket No. 97 (June 1, 2018).

32.     On June 26, 2019, the Puerto Rico Court of Appeals affirmed the San Juan Court of First Instance's judgment.

33.     On August 16, 2019, DNI filed a certiorari before the Puerto Rico Supreme Court.

34.     A month later, on September 16, 2019, DNI initiated this adversary proceeding.

35.     Subsequently, on November 1, 2020, the Puerto Rico Supreme Court denied DNI's writ of certiorari and as such the Puerto Rico Court of Appeals' judgment was upheld.

36.     The judgments of the San Juan Court of First Instance and the Puerto Rico Court of Appeals are final, firm and unappealable.

## III.     LEGAL ANALYSIS

The main issues before this court are twofold: the first is a threshold issue regarding whether we even have jurisdiction to entertain this controversy, and second, if we have jurisdiction, was the San Juan court precluded from ruling in the Second Local Court Action because it was a core proceeding. This court observes that the adversary complaint is premised on an action that was in essence unrelated to the bankruptcy estate and that did not have effect over the bankruptcy estate. This court also notes that preclusion doctrine impedes it from granting DNI's remedy because these issues were raised and adjudicated during the Second Local Court Action proceedings. The court is not in a position to act as an appellate forum and allow DNI to take a second bite at the apple.

A. <u>Jurisdiction of the Bankruptcy Court</u>

A hearing was held to consider the cross-motions for summary judgment. At the hearing, DNI argued that the bankruptcy court should not abstain from ruling in

the present case because the Puerto Rico Court of Appeals ruled that the San Juan Court of First Instance did not have subject matter jurisdiction to rule on the Trustee's abandonment in the Second Local Court Action. As such, because the issue involves a federal question, the bankruptcy court should rule on whether abandonment was proper. According to DNI, if the abandonment of the case by the Trustee was not performed in accordance with the Bankruptcy Code, the San Juan court judgment is void and unenforceable because the matter adjudicated was in the exclusive purview of the bankruptcy court. DNI further alleges that the claims for breach of fiduciary duty and damages are not subject to abstention because they are sought in the alternative and presuming that the San Juan Court judgment is valid and enforceable. The Diaz Family opposed DNI's argument and seeks dismissal of the case on the grounds that the San Juan court proceedings were not of core-nature and involved issues that did not dispose of property belonging to the bankruptcy estate of the Debtor.

The jurisdiction of the bankruptcy court is divided into core proceedings and noncore proceedings. Core proceedings are cases that arise under the Bankruptcy Code or arise in a case under the Bankruptcy Code. 28 U.S.C. § 157. On the other hand, noncore proceedings are cases that do not meet the requirement of "arising under" or "in a case under" the Bankruptcy Code. For a case to qualify for the bankruptcy court's jurisdiction, it must meet the "arising in" or "related to" standard.[7]

---

[7] "'Cases under title 11' refers only to the bankruptcy petition itself, and it is the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place. In turn, 28 U.S.C. § 157 permits the district courts to refer to bankruptcy courts all proceedings arising under title 11 or arising in or related to cases under title 11. This broad jurisdiction grant allows the bankruptcy courts to deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Gupta v. Quincy Med. Ctr., 858 F.3d 657, 661-662 (1st Cir. 2017). See also Boudreau v. United States (In re Bodreau), 622 B.R. 817 (B.A.P. 1st Cir. 2020) ("An adversary proceeding "[arises] under title 11 when the Bankruptcy Code itself creates the cause of action.").

The five counts brought forth by DNI are not "arising under" the Bankruptcy Code or "related to bankruptcy" because they are based on a state court action that had no effect on the Debtor's bankruptcy estate. It is clear from the record that the issue that brings us here is a third-party dispute between non-debtors. As a result, core jurisdiction is not implicated. Courts have rejected the notion that bankruptcy courts have "related to" jurisdiction over third-party actions. Feld v. Zale, Corp., 62 F.3d 746, 753 (5th Cir. 1995). The bankruptcy court may intervene to the extent that the third-party dispute deals with property of the estate or the dispute will have an effect on the estate. Id. If a judicial action does not impact the rights of a debtor, a bankruptcy court cannot exert its jurisdiction. In re Edwards, 962 F. 2d 641, 643 (7th Cir. 1992).

In the present case, even though the Debtor was a plaintiff in the Second Local Court Action, it appears from the record that its participation in the process was passive and as such it was a nominal party. The appearance of the Debtor as a plaintiff in the Second Local Court Action appears to be correct under Puerto Rican law. Agosto v. Nieves, 114 D.P.R. 601 (1983)(an indispensable party "refers to the person or entity that must be joined to the suit in order not to affect its interest in the same.").[8]  A review of the judgment in the Second Local Court Action and the judgment from the Puerto Rico Court of Appeals reflects that during the proceedings before the San Juan court, the Trustee appeared, as the sole representative of the estate and evaluated the merits of the claims and deemed that the claim was of no value to the estate (Docket Nos. 87-1 & 87-2). The crux of the dispute in the Second Local Court Action was the responsibilities of DNI and its president, Mr. Cruz, towards the Diaz Family in the negotiations to acquire the Debtor's business.

---

[8] EDB was included as a Defendant in the Second Local Court Action as an indispensable party.

-10-

Therefore, the dispute was of a third-party nature and the chapter 7 bankruptcy estate had nothing to lose.

Conversely, a review of the bankruptcy case's docket shows that the Trustee abandoned the assets of the Debtor's business (Case No. 15-06573, Docket Nos. 182, 190 & 193). DNI also moved for a relief of stay to foreclose on the Debtor's inventory, machinery and equipment, and the court granted such relief (Case No. 15-06573, Docket Nos. 195 & 217). However, DNI complains that the Trustee did not abandon the Second Local Court Action in accordance with the Bankruptcy Code. The record shows that the judgment did not bring value or loss to the estate.[9] Even if we were to hold that the abandonment was not performed properly under the Bankruptcy Code, the result would be that the Trustee remained as the Debtor's representative during those proceedings that did not award money or property to the bankruptcy estate.

While we hold that the bankruptcy court is devoid from jurisdiction to hear this case because its genesis lies in the resolution of a third-party dispute that was not favorable to DNI, we also note that the issues brought forth in Counts I & V are precluded from being re-litigated. After reviewing the cross-motions for summary judgment, the court ordered the parties to show cause as to why the court should not dismiss the adversary proceeding in accordance with the Rooker-Feldman doctrine.[10] The order to show cause warned the parties of the Rooker-Feldman test as follows:

> The aforementioned doctrine impedes the losing party of a state court action to seek review and rejection of the state-court judgment in federal court. McKenna v. Curtin, 869 F.3d 44, 47-48 (1st Cir. 2017).

---

[9] In the Second Local Court Action, an amount of $252,130.00 plus a 5.75% legal interest was awarded to the Diaz Family for considerations that were not performed. The judgment did not award money or property to the Debtor.

[10] In its answer to the complaint, the first amended complaint and second amended complaint, the Diaz Family raised the Rooker-Feldman doctrine defense and indicated that the complaint was precluded because of it. Docket Nos. 31, 34 & 111.

-11-

> The Bankruptcy Appellate Panel for the First Circuit held that Rooker-Feldman applies when: 1) the federal-court plaintiff lost in state court; 2) the plaintiff complains of injuries caused by the state-court judgment; 3) the plaintiff invites the federal court to review and reject the judgment; and 4) the state-court judgment must have been rendered before the federal court proceedings began. Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 247 (B.A.P. 1st Cir. 2008). As such, lower federal courts, including bankruptcy courts, are barred from reviewing final state court judgments. Id. at 246-247.

Docket No. 112.

DNI answered the order to show cause and discussed why the Rooker-Feldman doctrine is inapplicable to the case before us (Docket No. 114). It explained that the doctrine is not applicable because the instant adversary proceeding was initiated while it was exhausting its appellate remedies at the Puerto Rico Supreme Court. DNI pointed to the case of Schwartz v. Schwartz, a case from the Bankruptcy Appellate Panel for the First Circuit that stated that the "Rooker-Feldman doctrine has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." Schwartz v. Schwartz (In re: Schwartz), 409 B.R. 240, 247-248 (B.A.P. 1st Cir. 2008). The Diaz Family responded and acknowledged that only the first three prongs of the aforementioned Rooker-Feldman test apply to the instant case (Docket No. 115). Both parties agree that the ending of state court proceedings in the First Circuit is defined as the moment "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved." Docket No. 114 at 12 & Docket No. 115 at 3 (citing Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24 (1st Cir. 2005)). Because DNI filed the instant adversary proceeding while it was exhausting its appellate remedies in the Puerto Rico Supreme Court, the Diaz Family conceded that Rooker-Feldman is inapplicable to the case at hand.

At the hearing, the court ordered the parties to file legal briefs regarding preclusion doctrine. Docket No. 118. The Diaz Family argued in their brief that both res judicata and collateral estoppel apply in the instant case. Docket No. 123. They further added that the doctrine of unclean hands applies to the case because DNI is seeking an equitable remedy when the San Juan court determined that it displayed bad faith in its negotiations with the Diaz Family in the Second Local Court Action. Id. DNI, alleges that the preclusion doctrines of res judicata and collateral estoppel are inapplicable to this case because the facts do not meet the standard. Docket No. 124. DNI further argues that these doctrines are affirmative defenses that were not raised by the Diaz Family. Id.

The Supreme Court of the United States held in Exxon Mobil Corp. v. Saudi Basic Indus. Corp. that "Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Supreme Court has consistently held that federal courts must "give to a state-court judgment the same preclusive effects as would be given that judgment under the law of the State in which it was rendered." Migra v. Warren City School District, 465 U.S. 75, 81 (1984).[11] Such preclusion doctrines include res judicata and collateral estoppel. Haven Eldercare, LLC v. Dupuis, 2012 U.S. Dist. LEXIS 3190 at 7 (D. Conn. 2012). The doctrines of res judicata and collateral estoppel support the policies of relieving parties of the cost and vexation of multiple lawsuits, conserving judicial resources, preventing inconsistent decisions, and encouraging reliance on adjudications. David H. Bathe, Annotation: Supreme Court's Views as to Res Judicata or Collateral

---

[11] DNI alleges that the Diaz Family is precluded from raising res judicata at this juncture and that the court should not apply issue preclusion and claim preclusion on its own motion because they are not jurisdictional defenses. Docket No. 124 at 2. The court disagrees because the Diaz Family had already raised Rooker-Feldman in the answers to the complaint and the court gives deference to the San Juan court in its adjudication of the contractual dispute.

-13-

Estoppel Effect of State Court Judgments on Federal Court, 72 L. Ed. 2d 911 (2nd 2012) (citing Allen v. McCurry, 449 U.S. 90 (1980) and Kremer v. Chemical Constr. Corp., 102 S. Ct. 1883 (1982)).

Section 1738 of title 28 states that "judicial proceedings of any court of any…State, Territory or Possession…shall have the same full faith and credit in every court within the United States…as they have by law or usage in the courts of such State, Territory or Possession." "Federal courts must give the same effect to a state or territory judgment as the issuing jurisdiction would." Moron Barradas v. Department of Education, 488 F.3d 472, 479 (1st Cir. 2007). The doctrine of res judicata bars the re-litigation of issues litigated in a state court proceeding that was finalized. Puerto Ricans for Puerto Rico v. Dalmau, 544 F.3d 58, 69 (1st Cir. 2008). Similarly, the doctrine of collateral estoppel or issue preclusion, bars the subsequent action between parties, whether on the same or a different claim, once a court has decided an issue of fact or law necessary to its judgment. MacCormack v. Ingersoll-Rand Company, 2018 WL 623589 (E.D. Mo. 2018). To determine whether a party to an action would be barred from re-litigating an issue or claim that was raised or could have been raised in a previous state court action, federal courts must look to state law. Allen v. McCurry, 449 U.S. 90, 96 (1980).

The Puerto Rico Civil Code establishes that for res judicata to apply, there must be the most perfect identity between the things, causes, and persons of the litigants being relitigated. 31 L.P.R.A. § 3343. The main focus is the requirement of identity of causes. Worldwide Food. Dis. Inc. v. Colon, 133 D.P.R. 827, 837, n.4 (1993). With regards to collateral estoppel, while there is no mention of the doctrine in the laws of Puerto Rico, the Puerto Rico Supreme Court has developed its own concept of collateral estoppel. A & P Gen. Contractors v. Asoc. Cana, 110 D.P.R.

753 (1981); 10 P.R. Offic. Trans. 984, 995-996 (1981). The elements of collateral estoppel in Puerto Rico require:

> (1) mutuality of parties -that is the plaintiffs and the defendants in the later action are the same as (or privy to) the parties in the earlier action, see Rodriguez Rodriguez v. Colberg Comas, 131 D.P.R. 212, 220-221 (1992); (2) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (3) the issue was actually litigated; (4) the issue was determined by a valid and binding final judgment; and (5) the determination of the issue was essential to the judgment. See Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 770 (1st Cir. 2010).

Garcia-Melendez v. Rodriguez Gonzalez, 227 F. Supp. 3d 160, 168 (D.P.R. 2016).

Moreover, the doctrine of collateral estoppel in Puerto Rico requires that the previous adjudication of facts essential to a final and valid judgment be "conclusive in a second action between the same parties, even when there are different causes of action." Id. (citing A & P Gen. Contractors v. Asoc. Cana, 110 D.P.R. 753, 762 (1981)). Collateral estoppel is limited "to issues that were actually litigated and adjudicated." Id. (citing Martinez Diaz v. E.L.A., 182 D.P.R. 580, 592 (2011)).

Because DNI alleges that the cause of action before us is different from that of the Second Local Court Action, the court will not discuss the application of res judicata in this case. However, because collateral estoppel dispenses the requirement of identity of causes, the court will analyze if the case is precluded under this doctrine. Garcia-Melendez, 227 F. Supp. 3d 168 (citing Worldwide Food. Dis. Inc. v. Colon, 133 D.P.R. 827, 837, n.4 (1993)).

The parties in the present action, DNI, the Diaz Family, the Debtor and the Trustee are privy to the earlier Second Local Court Action. A review of the Puerto Rico Court of Appeals judgment reveals that the issues of whether the action was a

core proceeding was litigated and adjudicated in the Second Local Court Action.[12] The Puerto Rico Court of Appeals determined that the error of lack of jurisdiction alleged by the appellants, here DNI, did not occur. The trial court's judgment was affirmed by the Puerto Rico Court of Appeals and subsequently the Supreme Court denied the writ to review the appellate judgment; as a consequence, the judgment from the lower court is final, unappealable and binding upon the parties. The determinations of whether the action was a core proceeding was essential to the judgment because if the proceeding would have been deemed as core, the Second Local Court would have been precluded from entering a judgment and the case would have been removed to the bankruptcy court.

State courts are allowed to interpret federal law. The United States Supreme Court has established that "state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication." Gulf Offshore, Co. v. Mobil Oil, Corp., 453 U.S. 473, 477-478 (1981). The Supreme Court further regards state courts as "presumptively competent, to adjudicate claims arising under the laws of the United States." Tafflin v. Levitt, 493 U.S. 455, 458 (1990).

The San Juan court found that it had jurisdiction over the complaint presented by the Diaz Family and Debtor and as such we give deference to its judgment. All courts have the capacity to analyze their jurisdiction over a case under their consideration. In this case, the Trustee appeared before the San Juan court and proffered that the bankruptcy estate of the Debtor had no interest in the contractual dispute between the parties. Therefore, the bankruptcy court denies the Plaintiff's

---

[12] The Puerto Rico Court of Appeals expressed in its judgment that "at the time in which the Trustee examined the parties' allegations and positions, the proposition that jurisdiction was lacking had already been raised." Docket No. 87-2 at 14 (certified translation of the appellate judgment, Case No. KLAN 201900314).

counts I and V which seek to declare the San Juan court's judgment null and void, and that no contract was perfected between the parties.

B. Plaintiff's Standing to Prosecute Counts III & IV

The case and controversy clause found in Article III, § 2 of the Constitution of the United States established the doctrine of standing. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). To prove standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. **This means, that an injury "must actually exist."** Id. at 1548(emphasis added). In bankruptcy, ordinarily the debtor, the trustee or debtor-in-possession are the ones that have standing to prosecute claims pertaining to the bankruptcy estate. However, there are limited circumstances where courts have recognized "derivative standing" to creditors to pursue causes of action of the estate. Scott v. Nat'l Century Fin. Enters. (In re Balt. Emergency Servs. II), 432 F.3d 557, 560 (4th Cir. 2005).

The Fourth Circuit Court of Appeals adopted the following standard for derivative standing:

> A creditors' committee [or secured creditor] may acquire standing to pursue the debtor's claims if (1) the committee [or creditor] has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee [or creditor] is (a) in the best interest of the bankruptcy estate, and (b) is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.

Id. at 562 (citing In re Commodore Int'l, Ltd. 262 F.3d 96, 100 (2d Cir. 2001; Glinka v. Murad (In re Housecraft Indus. USA, Inc.), 310 F.3d 64, 72 (2d Cir. 2002)).

Similarly, the Eighth Circuit Court of Appeals adopted a standard for derivative standing in PW Enters. v. N.D. Racing Comm'n (In re Racing Servs.), which stated that "to establish derivative standing, a creditor must show: (1) it petitioned the trustee to bring the claims and the trustee refused; (2) its claims are

colorable; (3) it sought permission from the bankruptcy court to initiate an adversary proceeding; and (4) the trustee unjustifiably refused to pursue the claims." PW Enters. v. N.D. Racing Comm'n (In re Racing Servs.), 540 F.3d 892, 900 (8th Cir. 2008). Additionally, the court reasoned that "[t]he real challenge for the creditor will be to persuade the bankruptcy court that the trustee unjustifiably refuses to bring its claims." Id.

The policy behind the doctrine of derivative standing is not compatible in bankruptcy cases where a trustee is appointed. Christian Pereyda, Why Derivative Standing Might Be Inappropriate in Chapter 7 Cases, 39 ABI Journal 11, 22 (November 2020). Derivative standing is more appropriate for chapter 11 cases because the bankruptcy estate is administered by the debtor in possession and not a trustee. Id. at 23. The role of the trustee in a chapter 7 case differs from that of the debtor in possession in a chapter 11 case, because it is in charge of marshaling assets and advocating for the benefit of the bankruptcy estate. Id. It has been pointed out that "allowing a creditor – a non-fiduciary – to go forward in the Chapter 7 trustee's stead could facilitate a creditor 'hijacking' a Chapter 7 bankruptcy case in a manner that Congress did not envision." Id. at 46 (citing In re Cooper, 405 B.R. 801, 804 (N.D. Tex. 2009)).

In the present case, DNI alleges that counts III & IV of this complaint are alternative causes of action that are of a derivative nature and that they are for the benefit of the chapter 7 estate of the Debtor. Docket No. 75 at 3. The court does not agree. After analyzing the standards from the Fourth Circuit Court of Appeals and the Eighth Circuit Court of Appeals, DNI does not have derivative standing to prosecute counts III & IV. It does not appear that DNI has permission from the Debtor or the Trustee to initiate this adversary proceeding; no permission was sought from the bankruptcy court; nothing in the record points out that the Trustee has unjustifiably refused to pursue a claim of the estate; the alternative claims do not

seem justified; and there is no showing that this adversary complaint is in the best interest of the estate or that it is necessary for the fair and efficient resolution of the bankruptcy proceedings. Furthermore, DNI has not shown how Dr. Diaz's administration of the Debtor caused an injury to it or the Debtor.[13]

## IV.   Conclusion

For the reasons discussed above, this adversary complaint is dismissed against Porfirio E. Diaz-Torres; Porfirio Diaz Romero, his wife Lillian Ivette Rodríguez de Armas and the conjugal partnership comprised by them; Iraida Diaz Romero; and Luis E. Diaz Romero, his wife Elba de Lourdes Rios-Prado and the conjugal partnership comprised by them; and the Chapter 7 Trustee.

Consistent with this opinion, the Chapter 7 Trustee is ordered to show cause within 28 days why his third-party complaint and counterclaim should not be dismissed because the adversary complaint is dismissed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of February, 2021.

_Mildred Cabán_
MILDRED CABAN FLORES
United States Bankruptcy Judge

---

[13] The Third Circuit Court of Appeals recently held in Artesanias Hacienda Real S.A. De C.V. vs. North Mill Capital LLC (In re Wilton Armetale, Inc.), 968 F.3d 273 (3rd Cir. 2020), a chapter 7 case, that a theory of recovery is not personal, but derivative, when a creditor asserts a claim that is dependent on harm suffered directly by the debtor and indirectly by the creditor. Artesanias, 968 F.3d 283. "If the cause of action belongs exclusively to the estate, then the creditor is divested of statutory authority to prosecute the claim." Patrick M. Birney & Jamie L. Edmonson, Understanding Standing: Statutory Authority Made Simple, 39 ABI Journal 11, 45 (November 2020) (citing Vreugdenhil v. Hoekstra, 773 F.2d 213, 215 (8th Cir. 1985)).

-19-